Good morning, your honors. My name is Danny Yadrin with Federal Defenders of San Diego on behalf of Mr. Torres. I will try to keep track of my own time for rebuttal. The district court failed to make Section 3C 1.2's required finding that Mr. Torres put a specific person at a substantial risk of serious bodily injury. Merely citing his speed is insufficient. A hundred miles an hour, right? Yes, your honor. At some point, we don't know for how long or where exactly on I-5, which is a six to eight lane highway in the San Diego area. The district court also punished Mr. Torres for declining to speak to prosecutors. So for those two reasons, this court should vacate and remand. I'm hearing interest in the guidelines issue, so I will begin with that. It's important to recognize what is not in dispute here. It is not in dispute that Mr. Torres, at some point, violated the standard of care. What is in dispute is whether those actions put a specific person at a substantial risk of serious bodily injury a term of art under the guideline. That is a high bar that the district court did not even bother to  He hit a car, right? He made contact with a car. That was occupied, right? It was, your honor, but the occupant declined to seek restitution. So going 100 miles an hour on I-5 and then later hitting an occupied car is not reckless conduct? As sort of the judge can't find that's reckless conduct? The order was reversed, your honor, so there was contact with the vehicle on the way out of the parking lot and then, yes, hit. Okay, sorry about that. At some point, I just want to be straight. Is your argument factual or legal? The argument is legal. So in Gosker Rees, this court sitting in Bond So you're accepting the facts in paragraph 37, the hit, the speeding, the police chase, even the inference of bystanders. All the facts are accepted. Your argument is there was legal error? Not the inference of bystanders. But the rest of the facts you accept? As stated in the PSR, yes, and we objected below for the guidelines application. So in Gosker Rees, this court held that when a district court announces a rule that doesn't engage with the facts of a case but merely says one commonly seen fact warrants a guidelines enhancement, that is a legal ruling that this court reviews de novo. And so it gave the example in Gosker Rees of a defendant saying, you know, I have a gun and does that warrant the threat of a death enhancement? That's a very common fact pattern. And that's a legal ruling. That's interpreting the guideline. And so, too, here, the district court, instead of engaging with the facts of this case and there really weren't any facts to engage with, unlike any of these other courts, 3C1.2 jurisprudence, we have no dash cam video. We have no descriptions of changing lanes. We have no descriptions of how Mr. Torres made contact with this vehicle. We don't have any of those facts. And so the district court merely made an assumption, if you make contact with a vehicle or if you hit 100 miles per hour at some point on I-5, this enhancement applies. But if you mentioned changing lanes as one that could justify it, why isn't 100 miles an hour equivalent to changing a lane? They're both reckless. How do you distinguish a vastly over speed limit drive from a changing of a lane? I did not mean to suggest that changing lanes on its own justifies the enhancement. In cases like Brewster, Brewster actually provides a really helpful contrast. So in Brewster, the defendant also hit 100 miles per hour. He then proceeded to make several unlawful lane changes. Cars had to stop to avoid accidents. The defendant actually eventually crashed and a car had to stop at an intersection to avoid hitting the defendant. And when this court held that the enhancement applied, it didn't even mention that the defendant hit 100 miles per hour. It cited all of this very reckless driving that impacted specific identifiable motorists. What about the fact that the police themselves judged they couldn't continue the chase because it would be too dangerous? That was an assumption that the district court made with no reference in the record. The PSR merely stated that at some point, Mr. Torres hit 100 miles per hour and police gave up the chase. This is not a case like Brewster or Young or Luna where the officers were worried about the moves that they had to be making on the road. And what really set this record is so threadbare compared to cases where this court usually affirms the enhancement. What if it was 120? That actually gets to my point, Your Honor, is instead of the district court making findings about what motorists were impacted here, it creates this impossible line drawing situation. Well, is there any number that's that's big enough by itself? Merely assuming speed, no. So I'm just having trouble with that because I assume the speed limit on I-5, maybe it's in the record, is 55. That's not even in the record. Okay, well, it's got to be about that number. Can take judicial notice of whatever it is. So he's going almost twice that speed limit just from common experience. Going on an interstate at 100 miles an hour is just inherently dangerous. It's just hard for me to understand, especially when combined with the police chase and hitting a car, how that isn't enough by itself. I mean, I could see a point if we were talking about 60 miles an hour or 70 miles an hour, but 100 is just such a big number on an interstate. I hear your point, Your Honor, but you just gave my answer for me. And that is, if 100 miles per hour without looking at anything else that's going on in the road is okay, why not 70 miles per hour if it's technically speeding? Well, I mean, I don't want to be facetious in an important case, but you know, you could channel your inner Justice Stewart and say, you know it when you see it, when it's 100. It is a formalist argument, Your Honor, but again, instead of making these sorts of tough line drawing exercise on an appellate review, the simpler solution is just for the government to present evidence at sentencing. I was a little, it may be a Ninth Circuit law, but the relief you asked for, citing Young, is to remand to have these facts elucidated. That's slightly surprising to me because that gives the government the second bite. If you're prevailing, the government can just get these extra facts, find out who the people were in the car that was hit. They get a second shot. That is the nature of sentencing appeals. There would be a remand for resentencing. If the government fails to prove the enhancement, the government gets another chance. This case is a little tricky, Your Honor, because the government actually cannot prove this this enhancement up because it was barred by the plea agreement. So the district court would have to hold an evidentiary hearing. Officers would have to take the stand and they could assess what conditions were on the road or how the contact was made with the vehicle. OK, remind me. So the plea agreement specified the government would stay silent or that the government would oppose the enhancement? It would stay silent. The government would only argue for certain enhancements that were specified in the plea agreement. And to the government's credit, it did not argue for this enhancement at sentencing. This was the district court acting sua sponte. Well, OK, that bleeds sort of into the second issue, because that sort of explains why the judge was very skeptical and needed to probe the plea agreement, what you call a Mitchell violation. In fact, the court is thinking, wait, the government, you're not being truthful in sentencing here. You can't negotiate away facts. So if reckless endangerment is there, you've got to tell us what the facts were. That's how I read the second issue was the court is beginning to get suspicious that the government is trying to induce a plea by denying facts that exist. That's not how that exchange came up in the record, Your Honor. So this is from E.R. 29 to 32. The district court was going through the beginning of 3553A analysis, and it mentioned offhand that it's unclear how long Mr. Torres had been involved in drug spunking, but it must have been some amount of time. And the prosecutor, to his credit, then stood up and said, no, Your Honor, we actually don't know that as far as this was our only interaction with Mr. Torres. There was not some ongoing investigation here. And then that is when the district court, despite the government already telling the district court in its papers that Mr. Torres had not done a safety valve debrief, started to press the prosecutor. Well, was there a debrief? And repeatedly asked, was there not? Why not? And that echoes Mitchell, which was also a drug case. Except the district court later said that the reason he said about the debrief was because it was this premeditation was important to him. And he wanted to find out if the defendant had said anything that would to the government that would inform him as to premeditation. I mean, that's what he said, right? He said he did say that, but the district court also said in laying out the aggravating and mitigating factors. I have that in mind that Mr. Torres did not speak to prosecutors. Well, he had something he had something in mind. The I have the transcript, but he said, I have something in mind. But when I read the transcript initially, it seemed to me that he was very annoyed at the AUSA. He was later very annoyed at the probation officer. And I'm not sure if this is what Judge Higginson was saying, but it struck me that he was unhappy that a representative of the United States, in his view, was hiding the ball as to some facts here. And I thought he was telling the AUSA, you know, I have that in mind. That is not the most natural reading of the transcript where you have the district court balancing, aggravating and mitigating factors. If we don't see an objection preserved as to the Fifth Amendment issue, do you have a plain error reversal based on Mitchell case that you can cite? Where the circuit court reversed a sentencing for a Mitchell violation, even if it wasn't preserved? No, Your Honor, but under any standard of review, reversal would be required if this court finds a Mitchell violation. And that's because Mitchell has been the law of the land for decades. And under Tapia, this court's case, if the district court considers a factor that is unlawful at sentencing, that affects the defendant's substantial rights. And under Tapia, that consideration of an impermissible factor necessarily affects the integrity of the judicial proceedings. And we'll give you some extra time for rebuttal. But is it at all relevant, again, if we find that there was no objection here to that statement, but if there had been, then the district court could have said more what he meant. Does that matter that you have what you're contending is this obvious violation, but there wasn't a specific objection? But if there had been, the district court could have further explained what he did or didn't mean. Is that relevant at all? That's always an issue with sentencing appeals on plain error. But here, the district court was very plain. And even if the district court, if given the chance, tried to put the genie back in the bottle, it can't undo a sentence he just imposed that was greater than anyone recommended. So if it was so plain, why wasn't there an objection by the defense counsel? Your Honor, you're punishing my client for deciding not to talk to the government. That's a violation of his constitutional rights. I mean, I can understand on the ground why somebody might not have wanted to say that to Judge Burns. But why shouldn't the counsel have said that? I was not the counsel below. No, I understand. I believe you gave my answer. There are all sorts of reasons why, in the heat of the moment, a trial counsel may not have objected. Right. We'll give you two minutes for rebuttal, and we've taken up a lot of your time with questions. Thank you. Good morning, Your Honors. May it please the Court. Peter Horn for the United States. Taking the first issue first, the reckless flight enhancement, I want to first address what Torres calls a threadbare record. These are undisputed facts reported in the PSR. About a hundred mile per hour chase where, as Judge Sung's question recognized, Torres actually made it away from agents. They had to give up the chase. And that included a collision with an occupied car before he even approached those speeds. Those are undisputed facts that were covered twice and where the district court twice made appropriate findings. Before you sort of focus on the district court, I'm curious about the government's behavior here. Just a few procedural questions. You did or didn't object to the PSR, which I assume gave an enhancement. There was no objection to the PSR made by the government. The government agreed, tacitly at least, that he shouldn't get the reckless endorsement. The government's position under the plea agreement was that it would not seek this enhancement. Would not seek it. That allows you to oppose it, but you didn't because the facts and the law support it. But you also can't approve of it because you've bargained that away? Is that basically where the position you're in? I think that's fundamentally right. So I don't mean to be folks on niceties, but these plea agreements are delicate. In other words, if you're here urging affirmance of the district courts, is that in any tension with the plea agreement that you would stay silent? In the government's view, no. And under the plea agreement, it's just silent on the enhancement. And so the government is not able to advocate for it? I'm right. The enhancement is specified, and you say you'll stay silent. I've never quite understood. That's a precarious position to be in when probation is properly informing the district court of facts. And then the government gets in this, I thought, somewhat evasive dialogue, like where we're not denying the facts, but we aren't saying that it actually supports it. But anyway, you're now here defending the enhancement, correct? And our position is that it wasn't an abuse of discretion for the court to apply it based on these facts. And I don't know that the plea agreement actually specifies no position on it. What is your rule of law? Even just the speeding, anything over the speed limit would justify it? Or you heard us asking opposing counsel, can you articulate a rule of law for the future? How much do you need for us to affirm? The high-speed chase alone, as this court's and other circuits' decisions make clear, can be enough. It can be enough, a high-speed chase. And there's cases like Torres-Lopez, White, Hicks, and the Seventh and Fourth Circuits that make that clear. A high-speed chase alone can be enough. Now, what speed exactly? Our position here is just that 100 miles per hour, that's more than enough. Add to that the collision with an occupied car, that's another fact, and a particular person put in danger. And going to Torres' point on that, that there wasn't a finding about a specific other person put in danger, that's not required. Brewster makes this clear, where the court assumed without deciding. It's sufficient, but it's not necessary. And in this case, there's not only the occupant of the car in the parking lot, but this is I-5. Now, the record is not clear exactly how much traffic there was that morning, how traveled the road was. There doesn't need to be. And there are several cases where courts have affirmed the application of this enhancement, where there isn't particular evidence on that. And in any event, as I believe Judge Bennett's questions went to, it's a fair assumption that on I-5, a major highway in the San Diego area, at 1030 in the morning, there's going to be other people put at harm because of this. So, I guess I won't beat a dead horse, but a little bit. These plea agreements are a little tricky, and he was upset because here you've just said there's just an overwhelming amount of evidence to support the enhancement. People hit, police chasing, 100 miles an hour, bystanders, and that the government, to get a plea, has said it'll stay silent. And then you end up in this predicament here. The record doesn't show exactly that it was to get a plea that the government was silent on this. It may well be a matter of plea negotiations and the guidelines the government was able to agree on. In any event, the parties agreed that they wouldn't seek it. Now, the government, could it have objected? Maybe so. No objection to the PSR was noted. But I think what the record shows at sentencing, and taking Your Honor's point about the district court's view of the AOSA there, is the prosecutor, I think the record shows, was being diligent, mindful of the plea agreement, and was being cautious. Was being cautious not to say things that might be interpreted as a breach of it. And when asked direct questions, gave direct answers, and gave the court the answers it was seeking, including about the debrief with, or the lack of a debrief with Torres. I can address that point unless... Would you say that was a stray comment, I'll keep it in mind? Or would you say it's perfectly kosher, it doesn't implicate Mitchell at all? In other words, are we saying it's not reversible error, but it's a mistaken statement? Or can a district judge say point blank to the defendant, I'm going to keep in mind that you didn't talk to the government. How do we write this, if you prevail? This is first going to the standard review, plain error. I can talk about the reasons for that. I'm trying to get at the rule. Can district courts say, looking at a defendant, I'll keep in mind that you didn't talk to the government. And therefore we'd be saying, okay, well, maybe it doesn't rise to plain error, it's a stray comment. Or is that within the court's arsenal of clarifying and confirming context? I think a stray comment is a fair way to put it. And another way I think of it is a one-off comment. It does not approach, in Tiarana's question, a court saying that they will keep in mind the silence and hold that against a defendant. Now, that raises an issue under Mitchell, under Safferstein. That's not what happened here. What happened here, the record shows, is the court was trying to get the full information, was trying to get all the facts, both about safety valve, to make the right determination, and as it turned to the 3553A factors, asked these questions, I think the record shows, to try to get a full understanding of Torres' involvement, to try to make sure it had all the facts. And once it got the answer about lack of debrief, it briefly acknowledged that. That's an acknowledgement. Acknowledgement, recognition, okay, I have that in mind, there wasn't a debrief. And then it moved on. And it immediately moved on to other facts about the case, the nature of the offense, and Torres' own conduct. And that is what ultimately, based on the record, animated the court's consideration and ultimate sentence here. There is no indication that there was any further consideration of the lack of a debrief as the court reached 80 months under the 3553A factors. Certainly no indication that the court enhanced what was a significantly below guideline sentence. What appears to have made a difference is reflected in pages of the transcript, and at page 36 in particular, that where the district court recognized it was 10 months over the government's recommendation, and what might have made a difference is if Torres hadn't basically used drugs while on bond. The district court was displeased with his conduct on bond.  Sorry? Was it a couple of times? A couple of times that the court. No, I mean the use of the violation of the conditions. Was it a couple of things that he failed or won? Yes, it was, I believe, three different times. Yeah. I see that. Counsel, when I read the transcript, ultimately it seems ambiguous, what the district court was referring to when he said, I'll keep that in mind. It just is nonspecific. He could have been referring to the thing he just said, the whole grilling of the AOSA about whether there was a debrief. Honestly, in my opinion, it's just ambiguous. I can't tell. I've tried to look for guidance from our precedent about what to do in that situation. We have some unpublished cases where we've just remanded to the district court to say, can you please tell us what you were talking about or clarify what you're considering? Complicated in this case because the district court judge is retired. Do you have any thoughts on what the appropriate consideration is to do when we just cannot tell what the district court had in mind? If the court believes it can't quite tell, that means it's subject to reasonable dispute. It is not an obvious error, as the plain error standard requires. It's not. So normally you're used to thinking of, we find there was error, but that it wasn't plain, that that was, as a legal matter, error. I think the problem here is if it was actually a consideration of the defendant's decision not to debrief, I think there's a fair argument. That is a plain error. The problem is more of a factual ambiguity versus a legal ambiguity. Do you have precedent saying where it's a factual ambiguity that can't be plain error? The Yijin Zhou case cited in the government's brief, that reflects that where there's a dispute about some factual issue, that cannot be an obvious error under plain error review. The case is cited setting forth the plain error standard, too, where there's some reasonable dispute about a fact. That can't be obvious. That cannot be a plain error. And even less, can Torres show the third and fourth prongs, that there's some reasonable likelihood he could have received a lower sentence? There is no indication of that in the record. In fact, as I mentioned a moment ago, what seems to have, I see I'm over time, but if I could address. Why don't you just finish answering Judge Summers' question. Even less can Torres meet the third and fourth prongs of plain error review. So even if the court were to see some issue and consider remand, the third and fourth prongs answer the court's question, too. Thank you. Thank you for the additional time, Your Honors. I will try to be brief. Whether or not the district court violated Mr. Torres' Fifth Amendment rights is a legal issue under bar. It is not a factual inquiry into the district court's mind. No Fifth Amendment case that I'm aware of treats it as a factual matter. Similarly, under Cuchables, a case also cited in our briefing, this court, you were talking about Judge Sung, if there's ambiguity in the district court's comments. And Cuchables says this court must assure itself that the district court did not violate Mr. Torres' Fifth Amendment rights. Now, Cuchables did involve a more ambiguous comment about burden shifting. But here, again, if you look at the context of the district court where he's addressing 3553A factors, saying I have that in mind along with the dirty drug tests and the speeding. But on the other hand, this wasn't a very big drug smuggling run for our district, so I have that in mind, too. And that parallel where he uses I have that in mind when talking about aggravating factors and mitigating factors shows that the district court was balancing 3553A factors. So if it's the same question, from what I can tell, normally the district court's comments are ambiguous and we have our duty to verify that the district court had only the proper factors in mind. We've remanded for the district court to clarify what they meant. What do we do here now that the district court judge is retired? It would be a remand and assign to a different district judge who would give Mr. Torres a new sentencing. But Mr. Torres can't be punished merely because his sentencing judge decided to retire. On the guidelines enhancement, two quick points. The government alludes to cases from other circuits. There is not a case I'm aware of with an exception from one case from the Fourth Circuit where a court in a published opinion held speed standing alone as a matter of law warrants the enhancement. I'm going to point to none in his briefing. Mr. Torres does not dispute that he made some poor decisions here. He merely seeks to have his sentence conform with the guidelines in the U.S. Constitution. Thank you for the extra time. All right. Thank you. We thank counsel for their arguments. The case just argued is submitted. And with that, we'll move to the second case on the argument calendar, United States v. Vienna-Hernandez.
judges: Higginson, BENNETT, SUNG